Kenneth SALAZAR, Petitioner,

v.

HI-LAND POTATO COMPANY; Colorado Compensation Insurance Authority; and The Industrial Claim Appeals Office of the State of Colorado; Respondents.

No. 95CA1787.

Colorado Court of Appeals, Div. II.

April 4, 1996.

Ozer, Ruppert & Ozer, P.C., Joseph W. Ruppert, Colorado Springs, for Petitioner.

Colorado Compensation Insurance Authority, Curt Kriksciun, Denver, for Respondents Hi–Land Potato Company and Colorado Compensation Insurance Authority.

No Appearance for Respondent The Industrial Claim Appeals Office.

Opinion by Judge CRISWELL.

In this workers' compensation case, petitioner, Kenneth Salazar (claimant), seeks review of a final order of the Industrial Claim Appeals Panel (Panel) which reversed an order of an Administrative Law Judge (ALJ) and allowed respondents, Hi–Land Potato Company and Colorado Compensation Insurance Authority, to suspend payment of his "medical impairment benefits" for the weeks he was incarcerated on a misdemeanor conviction. We affirm.

At issue in this appeal is whether the suspension of such benefits was mandated by § 8–42–113(1), C.R.S. (1995 Cum.Supp.), which provides that:

Notwithstanding any other provision of law to the contrary, any individual who is otherwise entitled to benefits under articles 40 to 47 of this title shall neither receive nor be entitled to such benefits for any week following conviction during which such individual is confined in a jail, prison, or any department of corrections facility.

We agree with the Panel that § 8–42–113(1) required the suspension of claimant's medical impairment benefits during his incarceration.

The relevant facts are not in dispute. Claimant was incarcerated in a county jail following his conviction on a misdemeanor offense from June 29, 1994, through September 20, 1994. Except for the period of his incarceration, it is undisputed that claimant is entitled to "medical impairment benefits" based upon a 19% whole person impairment rating under § 8–42–107(8), C.R.S. (1995 Cum.Supp.), payable from the date of his maximum medical improvement on June 6, 1994, through August 11, 1996. Relying on § 8–42–113(1), respondents suspended payment of these benefits during the period of his incarceration.

Following a hearing, the ALJ ruled that, in spite of claimant's incarceration, § 8–42–113(1) did not authorize the suspension of the benefits at issue. Accordingly, the ALJ ordered respondents to pay claimant the full amount of his medical impairment benefits, with interest on all past due amounts. Specifically, the ALJ ruled that "medical impairment benefits" under § 8–42–107(8) do not

constitute compensation for a claimant's "loss of earning capacity" and that § 8–42–113(1), therefore, does not apply to such benefits. On review, the Panel reversed the ALJ's order, holding that § 8–42–113(1) required the suspension of such benefits for the period of time claimant was incarcerated.

■ On appeal, claimant contends that the ALJ properly construed § 8–42–113(1) as being inapplicable here, asserting that such provision requires only the suspension of benefits that represent compensation for lost earning capacity and that medical impairment benefits under § 8–42–107(8) do not fall within this category. We disagree.

Here, as noted by the Panel, the language of § 8–42–113(1) mandates the suspension of *all* "benefits under articles 40 to 47 of this title" during the period that any claimant is incarcerated following conviction. This language necessarily includes medical impairment benefits under § 8–42–107(8). Hence, we conclude that the suspension of claimant's medical impairment benefits during his incarceration was required by the plain meaning of the clear and unambiguous language of § 8–42–113(1). *See Wood v. Beatrice Foods Co.*, 813 P.2d 821 (Colo.App.1991) (similarly construing and applying essentially analogous provisions of predecessor statute).

Moreover, such suspension of benefits furthers the purpose of § 8–42–113(1), which, like that of the predecessor statute, is "to remedy the perceived unfairness of requiring employers and insurance carriers to pay benefits as compensation for lost earning capacity to persons who have no earning capacity because their imprisonment has removed them from the work force." *Wood v. Beatrice Foods Co., supra*, 813 P.2d at 823.

■ Further, contrary to claimant's argument and the ALJ's ruling, medical impairment benefits are a form of benefits that are designed to compensate for lost earning capacity. As noted by the Panel, it has repeatedly been held in other workers' compensation contexts that "medical impairment benefits" under § 8–42–107(8) are a form of permanent partial disability benefits. *See City of Thornton v. Replogle*, 888 P.2d 782 (Colo.1995); *Ray v. Industrial Claim Ap-*

*peals Office,* —— P.2d —— (Colo.App. No. 95CA1215, 1996 WL 28671, January 25, 1996); *Durocher v. Industrial Claim Appeals Office,* 905 P.2d 4 (Colo.App.1995). And, while the 1991 amendments to the Workers' Compensation Act changed the method of calculating such benefits, medical impairment benefits under § 8–42–107(8) continue to be designed to provide compensation for a claimant's lost earning capacity. *See Colorado AFL–CIO v. Donlon,* 914 P.2d 396 (Colo.App.1995); *see also Duran v. Industrial Claim Appeals Office,* 883 P.2d 477 (Colo.1994).

Accordingly, the Panel's order is affirmed.

STERNBERG, C.J., and HUME, J., concur.